In the Matter of the Application of S. WALTER KAUFMANN and
NORVIN R. LINDHEIM.

First Department, April 13, 1928.

Attorney and client — reinstatement following disbarment — attorney
disbarred following conviction of felony — attorney subsequently par-
doned — Appellate Division may review facts resulting in conviction —
facts did not justify conviction and attorney is reinstated. (Judiciary
Law, § 88, subd. 4.)

The petitioner, an attorney at law, was disbarred following conviction of a felony
in the Federal court. On appeal from that conviction the judgment was con-
firmed, but, under the rules of the Federal court, the appellate court did not
have any power to review the facts. The sentence of the petitioner was com-
muted and he was subsequently granted a full pardon by the President.

The Appellate Division may review the facts resulting in the conviction of the
petitioner, and upon a review of those facts it is clear that the evidence relied
upon to convict the petitioner rests merely upon inferences and was entirely
insufficient to prove his guilt. The order of disbarment is vacated and the
petitioner is reinstated as an attorney at law. (Judiciary Law, § 88, subd. 4.)

DOWLING, P. J., dissents.

MOTIONS for reinstatement as attorneys and counselors at law.

*William D. Guthrie* and *A. Tulin*, for the motion.

*Charles H. Strong* of counsel for the Association of the Bar of the
City of New York, joining in the application.

FINCH, J. These are motions, by two former attorneys, to
vacate orders for their disbarment* heretofore made by this court
and for restoration to the roll of attorneys. Pending the deter-
mination of the motions, one of the attorneys died.

The petitioners were convicted, after a trial before a judge and
jury in the United States District Court for the Southern District
of New York, upon an indictment for conspiracy with others to
" defraud the United States by obstructing, impeding, hindering
and delaying the United States in, and preventing the United
States from, seizing, capturing, receiving, holding, administering,
assuming the control of and title to certain indebtedness of one
Edward A. Rumely to the Imperial German Government, an enemy
of the United States," the United States being then at war with
the Imperial German government. The indictment was under
section 37 of the United States Criminal Code (U. S. Stat. at Large,
1096), which provides as follows: " If two or more persons conspire
either to commit any offense against the United States, or to defraud
the United States in any manner or for any purpose, and one or more
of such parties do any act to effect the object of the conspiracy, each

---

* Original disbarment. See 195 App. Div. 827, 830

of the parties to such conspiracy shall be fined not more than ten thousand dollars, or imprisoned not more than two years, or both." Upon conviction by the jury, the learned judge who tried the case, in denying a motion to set aside the verdict, said: " I listened to the evidence with patience for five or six weeks as it was being introduced. I listened to the summing up of counsel, and I am not disposed to say that the jury did wrong in bringing in the verdict which it did." Upon appeal to the United States Circuit Court of Appeals of the Second Circuit, that court affirmed the conviction, summing up their consideration of the case by saying: " The defendants had a fair trial under a valid indictment." (*Rumely* v. *United States*, 293 Fed. 532, 560.)

Following the conviction the petitioners were sentenced to serve a year and a day in the United States Penitentiary at Atlanta, Ga. The United States Criminal Code (§ 355) provides: " All offenses which may be punished by death, or imprisonment for a term exceeding one year, shall be deemed felonies." (35 U. S. Stat. at Large, 1152.)

The Judiciary Law (§ 477) provides: " Any person being an attorney and counsellor-at-law, who shall be convicted of a felony, shall, upon such conviction, cease to be an attorney and counsellor-at-law, or to be competent to practice law as such."

The Judiciary Law (§ 88, subd. 3) provides: " Whenever any attorney and counsellor-at-law shall be convicted of a felony, there may be presented to the Appellate Division of the Supreme Court a certified or exemplified copy of the judgment of such conviction, and thereupon the name of the person so convicted shall, by order of the court, be stricken from the roll of attorneys."

Upon a petition being presented by the Association of the Bar of the City of New York to this court containing a certified copy of an extract of the minutes of the United States District Court setting forth the facts of the indictment, the conviction and sentence, this court entered an order of disbarment. (*Matter of Kaufmann*, 195 App. Div. 830; *Matter of Lindheim*, Id. 827.) After the affirmance of the judgment by the United States Circuit Court of Appeals of the Second Circuit, the Supreme Court of the United States denied a petition for a writ of certiorari (*Rumely* v. *United States*, 263 U. S. 713). The sentence was afterwards commuted by the President of the United States to imprisonment for one year in the Westchester County Penitentiary, White Plains, N. Y., and subsequently a second commutation was granted reducing the imprisonment to one month, which the petitioners served. Thereafter, upon recommendation of the Attorney-General of the United States, the President of the United States granted to each of the petitioners " a

full and unconditional pardon for the purpose of restoring his civil rights." Following this pardon an application was made pursuant to the Judiciary Law (§ 88, subd. 4), which provides: " Upon a reversal of the conviction for felony of an attorney and counsellor-at-law, or pardon by the President of the United States or Governor of this State, the Appellate Division shall have power to vacate or modify such order or debarment."

In considering that application this court said (*Matter of Kaufmann*, 213 App. Div. 555, 557): " There is no question of power involved because it is expressly conferred by statute. The learned counsel for the petitioner has very earnestly argued that the petitioner was not guilty of the crime charged against him, that he was unjustly and improperly convicted, and that vital errors were committed upon the trial. It is sufficient to say that the conviction was unanimously affirmed by the United States Circuit Court of Appeals of the Second Circuit, and that an application for a writ of certiorari was denied by the Supreme Court of the United States. We are concluded by the judgments of the United States courts and we are without power to review their proceedings. When our order of disbarment was made, we were required to enter it by our own statutory law, the conviction having been for a felony. If that conviction had been reversed upon appeal, an order of reinstatement would have been granted as of course, the ground for disbarment having been destroyed, there being no independent proof before us of professional or moral misconduct. But the conviction was not reversed. * * * The pardon of the President has set aside and annulled the penal consequences of the felony found to have been committed and has restored to the petitioner his civil rights, but it did not *ipso facto* reinstate him in his office of an attorney and counselor at law. It did not restore to him *ipso facto* that good character which he was required to possess upon being admitted to the bar and required to maintain in order to remain therein.

" In Annotated Cases, American and English (1917A, p. 1227), it is said: ' Where proceedings to disbar an attorney are founded on the professional misconduct involved in a transaction which has culminated in a conviction of felony, it has been held that while the effect of the pardon is to relieve him of the penal consequences of his act, it does not operate as a bar to the disbarment proceeding, inasmuch as the criminal acts may nevertheless constitute proof that the attorney does not possess a good moral character and is not a fit or proper person to retain his license to practice law. *People* v. *Burton,* 39 Colo. 164 * * *; *People* v. *George,* 186 Ill. 122 * * *; *People* v. *Gilmore,* 214 Ill. 569 * * *; *Nelson* v. *Com.,* 128 Ky. 779 * * *; Case of *In re* ——— [*An Attorney*],

86 N. Y. 573; *In re Hirst,* 9 Phila. (Pa.) 216,   *   *   *.   In *People* v. *George, supra,* the court said: " The offense of which respondent was convicted was, under the Statute, infamous, and his conviction for larceny and his sentence to the penitentiary for a felonious offense had the effect to degrade him, and establish not a good but a bad moral character. The pardon set up in respondent's answer restored him, so far as the power of the Governor could, ' to all his rights of citizenship, as provided by law.' The rights of citizenship he had forfeited by his conviction of an infamous crime were, that he was ' rendered incapable of holding any office of honor, trust or profit, of voting at any election, or serving as a juror.'   *   *   *   The pardon of the Governor restored respondent to all the rights he had forfeited by the conviction of the crime of larceny, and he was released from serving his term of imprisonment,— was relieved from the punishment the law inflicted for the offense. But the pardon could not efface the moral turpitude involved in the crime. It could not obliterate the moral stain upon his character. That remains.   *   *   *   The respondent having been convicted of a felony, as charged in the original information, notwithstanding the pardon does not possess such a ' good moral character ' as the statute requires and the purity of the bar demands of its members." '

" These were disbarment cases prosecuted after pardon which was held not to bar the proceeding."

Upon appeal to the Court of Appeals it was held that the Appellate Division had the power to consider the record of conviction *de novo.* Pursuant thereto " the applications [were] remitted to the Appellate Division for further proceedings in accordance with this opinion." (245 N. Y. 423.)

We have, therefore, considered the proceedings at the trial at which these convictions were had.

To review the facts fully would require an opinion of inordinate length. Any less than a full review would be partial and unsatisfactory. We, therefore, must be content to state the conclusion at which we have arrived. We agree with the Circuit Court of Appeals in their statement: " The jury has found them guilty, and we cannot say that there was no evidence which could justify the verdict which has been rendered." (*Rumely* v. *United States,* 293 Fed. 532, 560.) When the Circuit Court of Appeals, however (as pointed out by the Court of Appeals of New York), found any evidence, even though weak and inconclusive, it was without power to reverse upon a writ of error for error in fact. (*Mounday* v. *United States,* 225 Fed. 965, 967.) As already noted, this court is not so limited but is obligated to ascertain if there was error in

fact. In so doing we find that such evidence as there is rests wholly upon inferences, which, in our opinion, are insufficient to prove guilt. The verdict of the jury, therefore, finding these applicants guilty should not be allowed to stand in the way of their reinstatement. These applicants in consequence appear as innocent before this court. The orders of disbarment should be vacated and the petitioners restored to the roll of attorneys and counselors at law of the State of New York.

McAvoy and O'Malley, JJ., concur; Dowling, P. J., dissents.

Orders of disbarment vacated and petitioners restored to the roll of attorneys and counselors at law of the State of New York.