[Civ. No. 26655.   Second Dist., Div. Two.   Oct. 1, 1962.]

DANE COOK, Petitioner, v. TOM BRIGHT, as Director of the Department of Motor Vehicles, Respondent.

James L. Hay and Leonard B. Hankins for Petitioner.

Stanley Mosk, Attorney General, Warren H. Deering and Calvin W. Torrance, Deputy Attorneys General, for Respondent.

HERNDON, J.—Petitioner herein seeks a writ of mandate directing respondent Bright, as Director of the Department of Motor Vehicles, to vacate and set aside an order revoking petitioner's driver's license for a period of three years.

The facts, as they appear from the record before us, indicate that on March 13, 1962, petitioner pleaded guilty to a charge of violating section 23102, Vehicle Code, misdemeanor drunk driving. The complaint did not contain a charge that petitioner had suffered any prior convictions for driving a motor vehicle while under the influence of intoxicating liquor. Imposition of sentence was suspended and petitioner was granted summary probation for two years upon the following conditions: (1) that he pay a specified fine; (2) that he obey all laws; and (3) that he should not drive a motor vehicle after consuming any alcoholic beverage. The only reference made to petitioner's license is found in what purports to be condition number (4) of his probation and this is the simple statement "defendant may retain license."

The record before us shows that prior to its rendition of the order here under attack, the respondent department had re-

ceived abstracts of the above-mentioned judgment and of two previous judgments convicting petitioner of the same offense; said prior judgments were dated March 16, 1953, and September 11, 1953, respectively. On May 7, 1962, petitioner received from respondent department an ''Order of Revocation'' dated May 3, 1962, and indicating that his driving privileges had been revoked for a period of three years under the authority of section 13352, subdivision (e), Vehicle Code because of his conviction on March 13, 1962, of ''driving while under the influence of intoxicating liquor, a third or subsequent offense within a period of ten years.''

On May 21, 1962, petitioner's attorney wrote respondent department a letter requesting a hearing under section 14100, Vehicle Code, on the ground that petitioner needed his license in his employment and was ''covered by liability insurance.'' This letter also states that petitioner ''was tried as a first offender . . . and . . . sentenced as such . . . [and] it is therefore submitted that this case *more properly* falls within the provisions of Section 13352(a) rather than (e). . . .'' (Emphasis added.) Said letter further states ''that for over *eight* years [petitioner] was completely free of any traffic violations whatsoever. . . .'' (Emphasis added.)

On June 15, 1962, the department replied advising that petitioner had suffered prior convictions on March 16, 1953, and on September 11, 1953; and that since the revocation of his license was *mandatory* under these circumstances, there being no provision in the Vehicle Code which would permit the issuance of a license before said revocation ended, ''a hearing would not be in order at this time.''

Petitioner alleges that his counsel traveled to Sacramento to discuss the matter with the department personally ''for the purpose of securing a modification of Respondent's order *so that Petitioner would be able to drive a motor vehicle during the course of his employment.*'' (Emphasis added.) The department again advised him that no such modification was possible under the provisions of Vehicle Code and that a hearing seeking to secure same would therefore serve no useful purpose.

It should be noted that petitioner does not assert that he was ever denied a hearing on the question whether or not he had or had not suffered the prior convictions, or whether the department had mistakenly confused his record with that of some other party. No such assertion has ever been made nor has any such hearing been requested. Both petitioner and

respondent appear to agree that the prior convictions *had* in fact occurred, and that the only ground asserted as a basis for altering the department's order would be either (a) petitioner's alleged hardship, or (b) the invalidity of the order itself as asserted by the petition herein.

Petitioner's first claim of invalidity is based upon the fact that he "has not been *adjudged* guilty of a third violation . . . *by a Court of Law*" and that the court in his latest conviction did not *pass upon* his priors. As the result of this circumstance, petitioner apparently has been spared the payment of the minimum fine and the five days' incarceration required by section 23102, Vehicle Code. Obviously, this was not prejudicial to petitioner, and if he had desired a *judicial* determination of the question of priors, the court undoubtedly would have granted it if he had presented the true facts at the time of his trial and sentencing.

Petitioner, however, asserts that because the prosecuting officer and the court failed, for whatever reasons, to plead and adjudicate the facts concerning his past convictions, the department was precluded from following the mandatory statute which governed its action following his latest conviction. For this unusual proposition he cites *People* v. *Ratner,* 67 Cal.App.2d Supp. 902 [153 P.2d 790], and 39 Ops. Cal. Atty. Gen. 13. However, the issue discussed in both these citations is the limited one involving the punishment to be administered to a defendant *by the court* and not the related but separate duties of the Department of Motor Vehicles. Even the striking or dismissal of a charge of prior convictions is not the equivalent of a determination that a defendant did not in fact suffer the conviction. (*People* v. *Burke,* 47 Cal.2d 45, 51 [301 P.2d 241].)

Section 13352, Vehicle Code, provides: "The department *shall immediately* suspend or revoke the privilege of any person to operate a motor vehicle upon receipt of *a duly certified abstract of the record of any court showing that the person has been convicted of driving a motor vehicle while under the influence of intoxicating liquor.* The suspension or revocation shall be as follows: . . ." Thereafter follow the prescribed periods of suspension or revocation to be applied in instances of first, second, third or subsequent offenses.

The only precedent event required as a basis for action by the department is receipt by it of *"a record"* of conviction. There is no requirement that the record of any conviction must indicate the number of convictions which

preceded it. This is, of course, in keeping with the other provisions of the Vehicle Code in this regard, for it is the *department* that is to advise the *court* of prior convictions (§ 13209) and not that the *court* advise the *department* (§ 13210). Further, section 1807, Vehicle Code, provides that "The department is not required to maintain records relating to drivers of motor vehicles after the records are, in the opinion of the director, no longer necessary, *except that records of convictions* shall be maintained so long as *they may form the basis of license suspensions or revocations as prior convictions.* . . ." (Emphasis added.)

Petitioner also argues that if it can be said that the statutes purport to give the power to count the number of convictions without a counting by the court, this constitutes an "invasion of the province of the judiciary in violation of the California Constitution." This contention, however, has been determined against petitioner by our Supreme Court in *Escobedo* v. *State of California,* 35 Cal.2d 870 [222 P.2d 1], when it stated at page 877: "Giving to the Department of Motor Vehicles the power and duty to find the facts on which suspension of license depended, and to exercise limited 'judgment,' did not violate section 1 of article III or section 1 of article VI of the state Constitution [citations]."

Petitioner next contends that the order is invalid because, even if the department could determine the facts upon which its mandatory action is based, it is a denial of "due process" not to allow him a hearing thereon. This also was decided contrary to petitioner's contention in *Escobedo* v. *State of California, supra,* when the court stated at page 876: "Suspension of the license without prior hearing but subject to subsequent judicial review did not violate due process if reasonably justified by a compelling public interest."

In *DiGenova* v. *State Board of Education,* 45 Cal.2d 255 [288 P.2d 862], in dealing with the summary revocation of a teacher's license, the court stated at page 260: "In the revocation of a license for the conviction of a specified crime under statutes like section 12756 [of the Education Code] there is no real necessity for the board to 'examine the facts, resolve any conflicts in the evidence, and exercise its judgment in respect thereto' [citation]. There can be little dispute as to the conviction, as it is a matter of public record and the question of identity is not likely to arise. . . . Revocations on such grounds constitute ministerial action by the board rather than quasi judicial action." Further, at page 262, the

court quoted *Ratliff* v. *Lampton,* 32 Cal.2d 226, 227 [195 P.2d 792, 10 A.L.R.2d 826], as follows: " 'We are not concerned with those provisions which make it mandatory upon the department to revoke or suspend the privilege of any person to operate a motor vehicle upon the highway upon receipt of a record showing that he has been convicted of certain specified offenses. [Citations.] In such cases the facts have already been determined in the criminal proceeding.' "

Because of the public importance of this problem, the following language of *Hough* v. *McCarthy,* 54 Cal.2d 273, 285 [5 Cal.Rptr. 668, 353 P.2d 276], also deserves repetition: "Suspension or revocation of a driver's license without a hearing does not violate due process where the action is justified by a compelling public interest. [Citation.] Such a public interest in the immediate suspension of licenses of persons convicted of drunk driving is shown by the factors which the director has taken into consideration. The order suspending petitioner's license shows that the director relied upon the administrative determination that ordinary methods of persuasion have failed to stop the increase in accidents due to drunk driving and that the frequency of such accidents will be enhanced by increased congestion on the highways. In 1959 there were 31,763 convictions of first offense drunk driving in California. . . . The incidence of death and serious injury on the highways has undeniably assumed tragic dimensions and has been due in a significant degree to the effects of alcohol upon drivers. So long as the measures adopted do not amount to a substantial invasion of individual rights, society must not be prevented from seeking to combat this hazard. [Citation.]"

Petitioner's final argument is that "the arbitrary action of respondent has deprived petitioner of a right as well as a privilege." As previously indicated, the action of the department was not *"arbitrary,"* but by law was *"mandatory."* The gist of petitioner's argument herein, however, is that today the vehicular use of the public highways by a man in his occupation is a necessity, and that he has a *"right"* thereto as well as a *"privilege."* Without being drawn into semantic niceties, it is sufficient to say that whatever "right" petitioner had ended when he thrice abused it. It is also argued that "his violation of Section 23102 of the Vehicle Code upon which Respondent has based its action occurred on a Sunday while he was driving his pleasure vehicle and not engaged in his employment." He further submits that any record possessed by respondent "which could possibly be

identified with Petitioner through judicial procedure would reveal that he has never been guilty of such a violation while driving during the course of his employment.''

We are wholly unable to perceive what consolation a victim of a drunken driver would derive from the fact that he had been maimed by a driver in quest of pleasure rather than one engaged in his employment. █ Since the Legislature has seen fit not to trust repeated drunken drivers to operate their vehicles under restricted licenses while engaged in their employment, this court certainly will not determine that such persons have a constitutional right to be thus trusted.

The petition is denied. The alternative writ is discharged.

Fox, P. J., and Ashburn, J., concurred.